# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jose Bustos, # 243392, | ) Civil Action No. 3:06-0368-HFF-JRM |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| William White, Warden of Broad River Correctional | )**REPORT AND RECOMMENDATION** |
| Institution; and Henry D. McMaster, Attorney General of | ) |
| South Carolina, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

Petitioner, Jose Bustos ("Bustos"), is an inmate at the South Carolina Department of Corrections serving a sentence of twenty years imprisonment for drug and weapons violations. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 2, 2006.[1] The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on April 12, 2006. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on April 20, 2006, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on June 29, 2006.

---

[1]This is the Houston v. Lack, 487 U.S. 266 (1988) "delivery" date. See order filed February 16, 2006.

**Procedural History**

Bustos pled guilty on August 11, 1997 in Pickens County. (App. I, 81).[2] He was represented by Dallas Ball.  He did not file a direct appeal.

    A.      PCR I

Bustos filed his initial PCR on October 31, 1997.  An evidentiary hearing was held on October 5, 1998.  Bustos appeared and testified.  He was represented by Debra Chapman. (App. I, 1).  The PCR court issued an Order of Dismissal dated February 16, 1999. (App. I, 73).  PCR counsel filed a <u>Johnson</u> petition[3] for writ of certiorari in the South Carolina Supreme Court raising the following claims:

1. Did the lower court err in finding that Petitioner's guilty plea was entered knowingly, intelligently and voluntarily?

2. Did the lower court err in holding that Petitioner's trial counsel was not ineffective for failing to argue the suppression of the search of the trailer and allowing Petitioner to plea to those charges?

3. Did the trial court lack subject matter jurisdiction due to defects in the indictments?

The petition for writ of certiorari was denied by order of the South Carolina Supreme Court dated June 22, 2001.  The Remittitur was returned on July 10, 2001.

---

[2]As outlined herein, Bustos filed three actions in state court collaterally attacking his conviction: (1) <u>Bustos v. State</u>, 97-CP-39-822 ("PCR I"); (2) <u>Bustos v. Maynard</u>, 2001-CP-39-1012 ("State Habeas Action"); and <u>Bustos v. State</u>, 02-CP-39-907 ("PCR II").  Bustos sought appellate review from denial in PCR I and PCR II.  Thus, there are two appendixes ("App. I" and "App. II") in the record before this court.

[3]<u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 2001 (1988).

B.     State Habeas Action

Bustos filed his state habeas action on October 25, 2001.  A hearing was held on March 24, 2003 after which the Court issued an Order of Dismissal finding that, under the circumstances, Bustos was barred from pursuing a writ of habeas corpus in state court.  The Court noted that Bustos had, by the time of the hearing, filed PCR II and that he could amend his application to pursue the relief he sought in the state habeas action.

C.     PCR II

Bustos filed PCR II on June 12, 2002 through counsel.(App. II, 27).  An amendment was filed on December 2, 2002. (App. II, 38).  An evidentiary hearing was held on July 28, 2004 (App. II, 47).  Bustos appeared and testified.  The PCR Court issued an Order of Dismissal filed August 20, 2003. (App. II, 83).  The Court dismissed all Bustos' claims as successive and untimely except his claims that his trial attorney was ineffective in misinforming him about parole eligibility and deportation.  With respect to those two claims, the PCR court found as fact "that trial counsel did not advise the Applicant about either parole eligibility or deportation possibilities with regard to his charges." (App. II, 86).

A Johnson petition was filed on Bustos' behalf through the South Carolina Office of Appellate Defense raising the following issue:

Whether there was any evidence to support the PCR judge's findings that petitioner was not entitled to relief?

The petition was denied by Order dated August 26, 2005.  The Remittitur was returned on September 12, 2005.

3

## Grounds for Relief

In his present petition, Bustos asserts that he is entitled to a writ of habeas corpus on the following grounds:

GROUND ONE:                  Ineffective assistance of counsel.

SUPPORTING FACTS:            The petitioner received ineffective assistance of counsel inasmuch counsel failed to: (a) fully inform petitioner of deportation consequences (b) ineligibility of parole status; (3) file a motion to suppress (4th Amendment); and conduct reasonable investigations of petitioner's ability to read and write English in order to properly participate in the proceedings (sic).

GROUND TWO:                  Guilty plea involuntary and unlawfully induced.

SUPPORTING FACTS:            The Petitioner was coerced into entering a plea of guilty without the ability to read and write English, the petitioner waived numerous rights unintelligently by and through the illegally induced and coerced guilty plea.

GROUND THREE:                Conviction obtained by a violation of privilege against self incrimination.

SUPPORTING FACTS:            The participation of petitioner's comments or statements during the guilty plea are in violation of the rule against self incrimination, as the petitioner could not effectively waive his right to participate in those proceedings without fully understanding English (of the effects of such waivers due to incompetence).

## Discussion

Respondents assert that Bustos' petition should be dismissed as several of the claims are procedurally barred, the entire petition is untimely, and even if the claims are considered on the merits, Bustos is not entitled to relief.

## A.    Procedural Bar

Respondents argue that Grounds 2 and 3 and part of Ground 1 are procedurally barred.  Respondents concede that Grounds 1(a) and(b), ineffective assistance of trial counsel based on failure to "fully inform petitioner of deportation consequences" and ineligibility for parole were properly presented to the South Carolina Supreme Court for review.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  The two theories rely on the same rationale.  The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.    Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i)  there is either an absence of available State corrective process; or
> >
> > (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)   A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application.  See, S. C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4]  If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

### 2.    Procedural bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion.  The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances.  See discussion below on procedural bypass.

[5]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim.  Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice,  the federal courts generally decline to hear the claim.  See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice").  In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply.  Matthews v.

Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000).  Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default.  O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997).  To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual innocense as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents.  Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and prejudice or actual innocense.  If not raised by petitioner, the court need not consider the defaulted claim.  Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

After denial of the PCR, appellate counsel filed a Johnson petition for writ of certiorari[6] with the South Carolina Supreme Court.  In Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present.  Counsel is required to file the Johnson petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal.  A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the Johnson petition.  The applicant may file a pro se

---

[6]All appeals from the denial of a PCR application are made by seeking a writ of certiorari from the South Carolina Supreme Court.  See SCACR 227.

brief raising additional issues. <u>Foster v. State</u>, 298 S.C. 306, 379 S.E.2d 907 (1989). In ruling on a <u>Johnson</u> petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or issues raised in the <u>Johnson</u> petition and any issues raised by the applicant in his pro se brief. Further, the South Carolina Supreme Court conducts a review of the record when a <u>Johnson</u> petition is filed. <u>King v. State</u>, 308 S.C. 348, 417 S.E.2d 868 (1992). In so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court. The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria. Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR. See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP. <u>Bryson v. State</u>, 328 S.C. 236, 493 S.E.2d 500 (1997). Counsel is required to object to any deficiencies in the order of the PCR court. <u>McCullough v. State</u>, 320 S.C. 270, 464 S.E.2d 340 (1995). This duty falls on the PCR applicant if not raised by counsel in the <u>Johnson</u> petition. See <u>Pruitt v. State</u>, 310 S.C. 254, 423 S.E.2d 127, 128 n.2 (1992) ("the general rule [is] that issues must be raised to, and ruled on by, the post-conviction judge to be preserved for appellate review."). See also, <u>Padgett v. State</u>, 324 S.C. 22, 484 S.E.2d 101 (1997) (issues not ruled on by PCR court are not preserved for appeal). Thus, when considering a <u>Johnson</u> petition, the South Carolina Supreme Court considers only those issues raised by the <u>Johnson</u> petition, raised in any pro se brief or petition filed by the applicant, and those issues specifically ruled on by the PCR court.

Respondents concede that Bustos' claims of ineffective assistance of counsel concerning parole eligibility and deportation are properly before the court. It appears that Bustos' claim of ineffective assistance of counsel for failing to move to suppress the search of his mobile home was raised as Issue 2 in the <u>Johnson</u> petition following denial of PCR I. Ground 2 in the present petition, involuntary guilty plea, appears to have been raised as Issue 1 in that <u>Johnson</u> petition. It does not

appear that Bustos ever raised Ground 3 in the present petition, that his plea was involuntary because he did not fully understand English in either <u>Johnson</u> petition.

**B.    Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). In the case of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." <u>Turner v. Bass</u>, 753 F.2d 342, 348 (4th Cir. 1985) quoting <u>Strickland</u>, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. <u>Strickland</u> requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
>                         * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty. A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea. He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann." Tollett v. Henderson, 411 U.S. 258, 267 (1973). When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test. Under this prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

A criminal defendant must be informed of the direct consequences of his plea. Misinformation as to the direct consequences of a plea renders the plea involuntary. Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment).

13

Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea. Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (the date a defendant will be eligible for parole is a collateral consequence of a plea). "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

The court considering PCR II found as fact "that trial counsel did not advise the Applicant about either parole eligibility or deportation possibilities with respect to his charges." (App. II, 86). This fact is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Based on this finding, the court held that "trial counsel's performance did not fall below reasonable professional standards." (Id.). Respondents argue that this holding was not "contrary to, or involved an unreasonable application of, clearly established Federal law." The undersigned agrees with this argument as to counsel's failure to advise Bustos concerning deportation, but rejects the argument as to counsel's failure to advise Bustos that he would be ineligible for parole.

The Fourth Circuit has held that "an attorney's failure to advise a client that deportation may result from a conviction does not constitute ineffective assistance of counsel." United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) (citing United States v. Campbell, 788 F.2d 764, 768 (11th Cir. 1985); United States v. Gavilan, 761 F.2d 226, 228 (5th Cir. 1985); and United States v. Santelises, 509 F.2d 703, 704 (2d Cir. 1975). The court reasoned that "(t)o hold otherwise would place the unreasonable burden on defense counsel to ascertain and advise of collateral consequences of a guilty plea which courts have uniformly held is not ineffective assistance of counsel." Yearwood, 863 F.2d at 8.

Generally, the date a defendant will become eligible for parole is a collateral consequence of a guilty, and counsel has no duty to spontaneously advise his client on the issue. Strader, 611

F.2d at 65. See also, <u>O'Tuel v. Osborne</u>, 706 F.2d 498 (4th Cir. 1983). However, parole ineligibility is considered a direct consequence of a guilty plea, and counsel has an affirmative duty to advise his client of this fact. See <u>Cuthrell</u>, 475 F.2d at 1365-66; <u>Bell v. North Carolina</u>, 576 F.2d 564, 565 (4th Cir. 1978) and <u>Chapman v. Angelone</u>, 1999 WL 511062 (4th Cir. 1999) (unpublished). The court in PCR II specifically found that counsel gave Bustos no advice concerning parole, and found counsel was not ineffective applying the rule for a collateral consequence of the plea. In this respect, the undersigned concludes that the court in PCR II misapplied <u>Strickland</u>.

Having reached this conclusion, Bustos still may not be entitled to relief. The record presented to this court is not entirely clear. At the hearing in PCR II, both the attorney for the State and the attorney for Bustos indicated that parole ineligibility stemmed from a classification change by the South Carolina Department of Corrections ("SCDC") (App. II., 50-51). Bustos' counsel stated that Bustos first learned that he was ineligible for parole when he received a memo from SCDC dated May 3, 2002. However, that memo is not a part of the record before this court. It may be that Bustos was originally eligible for parole, but became ineligible at a later time due to a change in law or SCDC classification. If this is so, trial counsel could not have been ineffective for failing to advise Bustos that he was ineligible for parole.

**C.    Statute of Limitations**

Respondents assert that Bustos' present petition is not timely as over one year of untolled time lapsed between the date his conviction became final and the filing of his present petition. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek

16

further appellate review)." <u>Taylor v. Lee</u>, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial

of relief in the state courts in state habeas proceedings, neither the time for filing a petition for

certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by

the United States Supreme Court, is tolled." <u>Crawley v. Catoe</u>, 258 F.3d at 399. A state collateral

proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2)

to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance

with the applicable laws and rules governing filings. These usually prescribe, for example, the form

of the document, the time limits upon its delivery, the court and office in which it must be lodged,

and the requisite filing fee." <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000) (footnote omitted). "When a

post-conviction petition is untimely under state law, 'that [is] the end fo the matter' for purposes of

§ 2244(d)(2)." <u>Pace v. DiGulielmo</u>, 544 U.S. 408, 414 (2005) quoting <u>Carey v. Saffold</u>, 536 U.S.

214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R.

Civ. P. 6(a). <u>Hernandez v. Caldwell</u>, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but

subject to the doctrine of equitable tolling. Equitable tolling applies only in "those race instances

where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable

to enforce the limitation against the [petitioner]." <u>Harris</u>, 209 F.3d at 330. Under § 2244(d), the

State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of

establishing the doctrine does not apply. <u>Hill v. Braxton</u>, 277 F.3d 701 (4th Cir. 2002). To benefit

from the doctrine of equitable tolling, a petitioner must show: (1) extraordinary circumstances, (2)

beyond his control or external to his own conduct, (3) that prevented him from filing on time. <u>Rouse</u>

<u>v. Lee</u>, 339 F.3d 238 (4th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 905 (2004). It is clear that a pro se

prisoner's ignorance of the law is not a basis to invoke equitable tolling. <u>United States v. Sosa</u>, 364

F.3d 507, 512 (4th Cir. 2004). Likewise, an attorney's mistake in calculating the filing date of the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Harris, 209 F.3d at 331.

The undersigned disagrees with respondents' calculations. Review of the record reveals the following dates and periods of untolled time:

| Event | Date | Days of Untolled Time |
|---|---|---|
| Guilty Plea | 8/11/97 | |
| Conviction final | **8/21/97** | |
| | | **71** |
| PCR I filed | 10/31/97 | |
| PCR I dismissed | 2/16/97 | |
| Cert. denied | 6/22/01 | |
| Remittitur returned | **7/10/01** | |
| | | **107** |
| State habeas filed | **10/25/01** | |
| | | **<230>** |
| PCR II filed | **6/12/02** | |
| State habeas dismissed | 4/29/03 | |
| PCR II dismissed | 8/20/03 | |
| Cert. denied | 8/26/05 | |
| Remittitur returned | **9/12/05** | |
| | | **143** |
| § 2254 Petition filed | **2/2/06** | |
| | Total | **321** |
| | Total | **<551>** |

Respondents assert that even if Bustos' state habeas action were considered to be properly filed, his present petition is untimely. The undersigned disagrees. The undersigned finds that only 321 days of untolled time lapsed if the state habeas petition was properly filed. However, if it was not properly filed, and the date of filing of PCR II is operative, an additional 230 days lapsed. Under this scenario, 551 days of untolled time lapsed between the date Bustos' conviction became final and the filing of the present petition.

The undersigned concludes that Bustos' state habeas petition was not "properly filed." Bustos filed this action in the circuit court. In its Order of Dismissal the circuit court found, citing

S.C. Const. Art. V §5, that if a prisoner is procedurally barred from filing a PCR application because it would be successive "his only means of obtaining state habeas corpus relief is to file a petition in the original jurisdiction of the [South Carolina] Supreme Court." Bustos' state habeas petition was not properly filed because he filed it in the wrong court, a court without jurisdiction. Artuz, supra.

However, this conclusion does not end the analysis. The memoranda of the parties ignore 28 U.S.C. § 2244(d)(1)(D) which provides that the statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The South Carolina statute of limitations for filing PCR applications has a similar provision. S.C. Code Ann. § 17-27-45(C). The court in PCR II implicitly held that the state statute of limitations did not begin to run until Bustos received the SCDC memorandum dated May 3, 2002.[7] If this date is operative, Bustos' present petition is timely with respect to his claim that his trial attorney was ineffective for failing to advise him that he would be ineligible for parole.[8] PCR II was filed on June 12, 2002, and remained pending until September 12, 2005. The present petition was filed on February 2, 2006.

The record is undeveloped on this issue. As noted above, the May 3, 2002, memorandum is not a part of the record, and it is unclear whether SCDC changed Bustos' parole eligibility. Bustos may have been deemed ineligible for parole at his initial SCDC classification. Bustos may, or may not be able to demonstrate that he was reasonably diligent[9] in discovering that he was

---

[7]Bustos testified in PCR II that he learned of the INS detainer in March of 2002 (App. II, 57).

[8]It may also be timely with respect to his claim that his attorney was ineffective for failing to tell him that he might be deported. However, as discussed above, the undersigned concludes that Bustos is not entitled to relief on that claim.

[9]"(T)he one-year period of limitation commences under section 2244(d)(1)(D) when the factual predicate of the claim could have been discovered through the exercise of due diligence, not when it was actually discovered. Due diligence does not require the maximum feasible diligence, but does require reasonable diligence in the circumstances. Section 2244(d)(1)(D) provides a
(continued...)

ineligible for parole.  Since the parties have failed to develop the record and present argument on this issue, the undersigned concludes summary judgment is inappropriate.

### Conclusion

Based on a review of the record, it is recommended that respondents' motion for summary judgment be denied as to petitioner's claim that his trial attorney was ineffective for failing to advise him that he would be ineligible for parole and granted in all other respects.

Respectfully submitted,

s/Joseph R. McCrory
United States Magistrate Judge

February 1, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[9](...continued)

petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known." Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004). (internal quotation marks and citations omitted.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).